UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DOREAN A. SANDRI, individually and
on behalf of all those similarly situated,

        Plaintiff,

v.                                                                     Case No. 18-C-1208

FINANCE SYSTEM OF GREEN BAY INC. and
JOHN DOES,

        Defendants.

## DECISION AND ORDER

Plaintiff Dorean A. Sandri filed this lawsuit on behalf of herself and all those similarly situated against Defendant Finance System of Green Bay Inc. and several John Does (collectively, FSGB), alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* Sandri claims FSGB sent her form letters about a debt she incurred for personal, family, or household purposes that contained statements that are false, deceptive, and misleading. The complaint alleges FSGB sent similar letters to other consumers. On August 28, 2018, FSGB filed a motion to consolidate this case with *Larkin v. Finance System of Green Bay Inc.*, Case No. 18-cv-496 (E.D. Wis.), and to dismiss the case for lack of jurisdiction and for failure to state a claim. On September 20, 2018, the court stayed the case pending its ruling on the motion to dismiss in *Larkin*. The court lifted the stay on November 15, 2018, in light of its decision in *Larkin* to grant the motion to dismiss and dismiss the case. FSGB has since withdrawn its motion to consolidate as moot. The motion to dismiss in this case is now fully briefed and ready for resolution. For the following reasons, the motion to dismiss will be granted.

**LEGAL STANDARD**

A motion to dismiss tests the sufficiency of the complaint to state a claim upon which relief can be granted. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *see* Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded factual allegations as true and draw all inferences in the light most favorable to the non-moving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368–69 (7th Cir. 1997); *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991). Rule 8 mandates that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, it must plead "more than labels and conclusions." *Id.* A simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

**ALLEGATIONS OF THE COMPLAINT**

Sandri, who is a Wisconsin resident, originally incurred a debt to a healthcare provider. FSGB, a corporation incorporated under the laws of Wisconsin with its principal place of business in Green Bay, Wisconsin, engages in the collection of debts owed to others. On August 6, 2017, FSGB mailed a form debt-collection letter to Sandri, attempting to collect a debt in the amount of $140.60 that was originally owed to Green Bay Radiology SC. The letter identifies the creditor as GREEN BAY RADIOLOGY SC and lists its address and telephone number. The letter provides:

2

> Once in a while despite good intentions bills become past due and we realize it.
>
> Your creditor is interested in you preserving a good credit rating with them.
>
> GREEN BAY RADIOLOGY SC is a separate billing office from the hospital; therefore they may not have received your insurance information. Please call them to verify the insurance information has been given.
>
> If you have any questions, please contact the above creditor at 920-336-4096.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

ECF No. 1-1 at 2.

On August 22, 2017, FSGB sent Sandri a second letter. The letter included the following language:

> **THIS IS OUR SECOND REMINDER!**
>
> You do not want to lose our confidence. You want to be worthy of the faith put in you by your creditor; yet the above account remains unpaid.
>
> Please contact your creditor or our office to make arrangements for payment on the above account. We are interested in your preserving a good credit rating with the above creditor.

ECF No. 1-2 at 2. FSGB sent Sandri a third letter on September 7, 2017. This letter provided, "Your creditor has placed your bill for collection. To avoid errors and to clear your credit record with the above creditor, send or bring your payment to our office, or pay online . . . ." ECF No. 1-3.

Sandri filed this lawsuit on August 6, 2018, on behalf of herself and all others to whom FSGB mails these letters. Sandri asserts the letters use false, deceptive, and misleading representations or means in connection with the collection of any debt in violation of § 1692e; use

3

unfair or unconscionable means in connection with the collection of any debt in violation of § 1692f; and "overshadow" a consumer's verification and dispute rights in violation of § 1692g.

**ANALYSIS**

The parties raise nearly identical arguments to those raised in *Larkin v. Finance System of Green Bay Inc.*, No. 18-cv-496 (E.D. Wis.). FSGB asserts that Sandri lacks standing under Article III to bring this lawsuit. Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" and "controversies" brought by litigants who demonstrate standing. *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886 (7th Cir. 2017). "The 'irreducible constitutional minimum of standing' consists of three elements: injury in fact, causation, and redressability." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The plaintiff bears the burden of pleading sufficient factual allegations that "plausibly suggest" each element. *Id.* (citation omitted).

As this court recognized in *Larkin*, the issue of standing in cases that only seek statutory damages for alleged violations of prophylactic acts such as the FDCPA seemingly took on new life with the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). In that case, the Court vacated the Ninth Circuit's decision in favor of the plaintiff in a Fair Credit Reporting Act (FCRA) case because the lower court had failed to consider whether the plaintiff had alleged an injury-in-fact sufficient to confer standing. The FCRA seeks to ensure fair and accurate credit reporting in part by regulating "the creation and use of consumer reports by consumer reporting agencies for certain purposes, including credit transactions, insurance, licensing, consumer-initiated business transactions, and employment." 136 S. Ct. at 1545 (citing 15 U.S.C. §§ 1681(a)(1); 1681a(d)(1)(A)–(C); 1681b) (internal quotation marks and alterations omitted). The plaintiff in *Spokeo* alleged that the defendant, which operated an internet "people search engine," violated the

FCRA by gathering and disseminating information about him in response to a search that revealed incorrect information about his life. More specifically, the profile generated by the defendant falsely stated that the plaintiff was married, had children, was in his 50's, had a job, was relatively affluent, and held a graduate degree. *Id.* at 1546. The plaintiff did not allege that he had suffered any harm as a result of the inaccuracies in the profile. The district court dismissed the plaintiff's complaint on the ground that he had not properly pled an injury-in-fact as required by Article III. The Ninth Circuit reversed, holding that the plaintiff's allegation that the defendant had violated his statutory rights was sufficient to satisfy the injury-in-fact requirement of Article III. *Id.*

In vacating the Ninth Circuit's decision, the Supreme Court emphasized the requirement that there be an injury-in-fact, "the '[f]irst and foremost' of standing's three elements." *Id.* at 1547 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)). It is not enough to allege a bare violation of law, the Court explained. "Injury in fact is a constitutional requirement, and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue a plaintiff who would not otherwise have standing." *Id.* at 1547–48 (internal quotation marks and alterations omitted). "To establish injury in fact," the Court stated, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). For an injury to be particularized, the Court explained, "it must affect the plaintiff in a personal and individual way." *Id.* at 1548 (internal quotation marks omitted). To be concrete, "the injury must be '*de facto*'; that is, it must actually exist." *Id.* (internal quotation marks omitted). The adjective "concrete," as understood by the Court, means "real, and not abstract." *Id.* (internal quotation marks omitted). But "concrete," the Court observed, is not the same as "tangible." *Id.*

5

at 1549. In determining whether an intangible harm constitutes an injury-in-fact, a court must look both at history and the judgment of Congress. *Id.* This is because "'Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Id.* (quoting *Lujan*, 504 U.S. at 580). For this reason, "'the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact,' such as where the statutory violation creates 'risk of real harm.'" *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 344 (7th Cir. 2018) (quoting *Spokeo*, 136 S. Ct. at 1549). "In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id.*

Applying these principles in this case, the court finds that Sandri's complaint is sufficient to allege the required injury-in-fact. Sandri alleges the letters she received from FSGB constitute false, deceptive, and misleading statements in violation of the FDCPA. If true, those statements create a risk of causing her the kind of harm the FDCPA was intended to prevent. Though intangible, such risk of harm is particularized, as the letters were sent to Sandri, and concrete, as the risk of harm from false, misleading, and deceptive statements regarding one's debts is real. It thus follows that the standing requirement is met.

Though Sandri has standing to pursue her claims, the complaint fails to state a claim upon which relief can be granted. The FDCPA is intended "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). A debt collector's communications are tested for compliance with the FDCPA under the "unsophisticated consumer"

standard. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 635 (7th Cir. 2012). Under this standard, the letter "must be clear and comprehensible to an individual who is 'uninformed, naive, [and] trusting,' but not without a rudimentary knowledge about the financial world or incapable of making basic deductions and inferences." *Id.* (quoting *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003)). An unsophisticated consumer is not a "dimwit" who interprets letters "in a bizarre or idiosyncratic fashion," but is instead a person who possesses "reasonable intelligence." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)).

Sandri asserts that the August 6, 2017 letter violates § 1692g(a) by failing to name the creditor. Section 1692g requires that a letter must contain, among other information, "the name of the creditor to whom the debit is owed." § 1692g(a)(2). "To satisfy § 1692g(a), the debt collector's notice must state the required information 'clearly enough that the recipient is likely to understand it.'" *Janetos v. Fulton Friedman & Gullace, LP*, 825 F.3d 317, 321 (7th Cir. 2016) (quoting *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 948 (7th Cir. 2004)). The parties do not dispute that the August 6 letter contains a line that identifies the creditor as Green Bay Radiology SC. Sandri nevertheless contends that the language in the letter stating that "GREEN BAY RADIOLOGY SC is a separate billing office from the hospital" implies that an unidentified hospital is the creditor and Green Bay Radiology is a separate billing office. Sandri's interpretation of the letter is bizarre and nonsensical. In its entirety, this section of the letter recommends that the consumer verify that Green Bay Radiology has received her insurance information because it has a separate billing office from the consumer's hospital. This helpful guidance does not make the creditor's identity ambiguous. It is clear that "not even 'a significant fraction of the population

7

would be misled' by the debt collector's letter." *Gruber v. Creditors' Protection Serv. Inc.*, 742 F.3d 271, 273–74 (7th Cir. 2014). The letter clearly identifies the creditor as Green Bay Radiology. Accordingly, this claim fails as a matter of law.

Sandri also claims that the letters violated § 1692g(b) by including statements that "overshadowed" her 30-day validation rights. Section 1692g requires that debt collectors provide debtors with a written validation notice that informs debtors of their right to dispute the validity of the debt within thirty days of receiving the notice. *See Durkin v. Equifax Check Servs. Inc.*, 406 F.3d 410, 416 (7th Cir. 2005). During the 30-day validation period, a debt collector may not create "confusion by contradicting the required information, overshadowing or obscuring it, or failing to explain an apparent contradiction." *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 629 (7th Cir. 2009).

Sandri contends that the August 6 letter contradicts and overshadows her verification and dispute rights under § 1692g because it directs the consumer to contact the creditor with any questions she may have about the debt. But the letter clearly included a validation notice: "Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, the office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification." ECF No. 1-1 at 2. The letter is clear that, even though Sandri may contact Green Bay Radiology with questions regarding the underlying debt, she must notify FSGB in writing if she disputes the debt. Because a "significant fraction of the population" would not find these statements, which are intended to be helpful to the consumer to

8

resolve the debt, to be confusing or inconsistent, *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776–77 (7th Cir. 2007), Sandri's claim fails as a matter of law.

Sandri contends further that the August 22 and September 7 letters also violate § 1692g because the letters do not inform the unsophisticated consumer of her continuing rights to dispute the debt and request verification. As an initial matter, the September 7 letter was sent and received after the expiration of the validation and dispute period. Therefore, any attempt to collect the debt after the thirty-day validation and dispute period has passed does not violate § 1692g. As to the August 22 letter, once the initial validation notice has been sent, § 1692g(a) does not require that further validation notices be sent. *See Durkin*, 506 F.3d at 417. The validation period is not a grace period; the debt collector is "'perfectly free' to demand payment and pursue collection efforts . . . within the validation period." *Id.* at 415 (quoting *Bartlett v. Heibl*, 128 F.3d 497, 500–01 (7th Cir. 1997)). As a result, the fact that FSGB's August 22 letter did not contain additional verification notices does not constitute a violation of § 1692g.

Sandri also contends that the letters violate § 1692g because it contains statements that create a false sense of urgency in an effort to induce Sandri into abandoning her validation period. In particular, Sandri asserts that the August 22 letter informed Sandri that "**THIS IS OUR SECOND REMINDER!**," warned that she did not "want to lose our confidence," and indicated that she wants "to be worthy of the faith put in [her] by [her] creditor" and that FSGB is "interested in [Sandri] preserving a good credit rating" with Green Bay Radiology. ECF No. 1-2 at 2.

The FDCPA makes it unlawful for a debt collector to use "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Sandri argues that the unsophisticated consumer would be misled by the letters to believe

9

that FSGB "has confidence" in her and that the creditor, Green Bay Radiology, "has faith" in her that she would lose if she did not pay her debt. As this court noted in *Larkin*, these statements are obviously true. Unless a radiologist is providing services for free, he or she no doubt trusts, or has faith, that the person served will pay. Likewise, debt collectors likely have some confidence that many people, when provided notice of an outstanding debt, will pay if they are able. Otherwise, why make the effort to collect the debt? Sandri's contention that these statements imply that nonpayment will harm the physician-patient relationship is bizarre and idiosyncratic. While an unsophisticated consumer may read a collection letter literally, she is presumed to have a rudimentary knowledge of the financial world and is capable of basic logical deductions. Even an unsophisticated consumer would read and interpret the letters Sandri received to understand that they are simply urging her to pay the debt, assuming she is able. Sandri's interpretation requires the unsophisticated consumer to disregard the entire purpose of the letters, which is to collect the debt owed the business that employs the radiologist that provided services to her, and infer that these comments are made about her as an individual. This proposed reading is "fantastic conjecture" and can be disregarded. *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004) (citations omitted). It is clear that a significant fraction of the population would not be misled by these letters. *See Gruber*, 742 F.3d at 273–74. Accordingly, these statements are not misleading or deceptive.

For similar reasons, Sandri's claim that the statement "we are interested in you preserving a good credit rating with the above creditor" is deceptive or misleading fails. To the extent that the statement infers that failing to pay a debt would affect Sandri's credit rating, that is a truthful statement. *See, e.g.*, *Harvey v. United Adjusters*, 509 F. Supp. 1218, 1221 (D. Or. 1981) (finding that "Your credit is a valuable asset. Pay your bills and retain good credit." does not violate the

FDCPA). It is not misleading or deceptive because the unsophisticated consumer has a basic financial background and would know the "well-known fact . . . that a failure to pay one's bills will affect his ability to obtain credit in the future." *Wright v. Credit Bureau of Ga., Inc.*, 555 F. Supp. 1005, 1007 (N.D. Ga. 1983).

Sandri argues that the unsophisticated consumer would infer that the statement that her doctor was maintaining a "credit rating system" and that her doctor-patient relationship would be harmed for nonpayment. This argument is bizarre and idiosyncratic. The unsophisticated consumer has a basic understanding of the financial system, which includes a basic understanding as to credit ratings. To discard this basic understanding and operate under a belief that each creditor maintains their own ratings would be nothing short of a bizarre interpretation of the statement. As a result, the court finds that the statements contained in the August 6 and August 22 letters do not violate §§ 1692e or 1692f.

Not only are these comments not misleading or deceptive, they are the kind of comments that are generally considered to be "puffing." Puffing is a rhetorical device that is "designed to create a mood rather than to convey concrete information or misinformation." *Taylor*, 365 F.3d at 575. The letters' comments about a consumer acting on paying a bill are meant to create a mood, not to rely concrete information about paying such a debt. Moreover, it would be perfectly obvious to the dimmest of debtors that a collector would like her to pay the debt off and would create positive reinforcement—through the use of terms like faith and trust—to encourage payment of the debt. That, however, does not make the comments anything more than puffery. *See, e.g.*, *Gruber*, 742 F.3d at 275 (holding "we believe you want to pay your just debt" to be puffery); *Taylor*, 365 F.3d at 575 (holding "act now to satisfy your debt" to be puffery). The test is the hypothetical

"unsophisticated consumer," not the hypersensitive consumer. Because the statements at issue are nothing more than puffery, they do not clearly overshadow the validation period in violation of § 1692g. The language in the follow-up letter merely encourages the debtor to pay her debts by informing her of the potential negative consequences associated with failing to pay. The letters Sandri received do not contradict the thirty-day validation period or her dispute rights. The complaint does not allege facts from which it is plausible to conclude that an unsophisticated consumer would find that the statements contained in the letters overshadow the debtor's validation and dispute rights. Therefore, Sandri's claims fail as a matter of law.

Sandri's complaint fails to state a claim upon which relief can be granted and will therefore be dismissed. Embedded in Sandri's response brief is a request to amend the complaint in the event the court grants FSGB's motion to dismiss. Because there is no certainty from the face of the complaint that any amendment would be futile or otherwise unwarranted, *see Runion ex rel. Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015), the dismissal is without prejudice.

## CONCLUSION

For the foregoing reasons, FSGB's motion to dismiss (ECF No. 7) is **GRANTED** and the complaint is dismissed without prejudice. Sandri may file an amended complaint within 21 days of the date of this order. Failure to file an amended complaint within that time period may result in dismissal of the action with prejudice.

**SO ORDERED** this   29th   day of January, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
